IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHARLIE NATTIEL,

    Plaintiff,

v().  CASE NO. 1:15-cv-150-WTH-GRJ

CAPTAIN LOTT, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 81, Defendant Mindy Tomlinson's Motion for Summary Judgment. Plaintiff has not filed a response in opposition and the time for doing so has expired.[1] The motion is therefore ripe for review. For the reasons discussed below, Defendant's motion for summary judgment should be granted.

### I. BACKGROUND

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), initiated this case by filing a *pro se* complaint under 42 U.S.C. § 1983. After filing two amended complaints, Plaintiff obtained

---

[1] Defendant filed her motion for summary judgment on February 13, 2017. (ECF No. 81.) Plaintiff, represented by counsel, was required to file his response within 21 days, or by March 6, 2012. *See* N.D. Fla. Loc. R. 56.1(C).

counsel and filed his third amended complaint ("Complaint") on July 27, 2016. (ECF No. 63.) In count two of his Complaint, Plaintiff claims Defendant— a nurse employed at the correctional facility where Plaintiff was housed— was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.[2] Specifically, Plaintiff contends that Nurse Tomlinson knew Plaintiff had chronic asthma and was partially blind and that chemical agents therefore posed a risk to Plaintiff's health and should not be administered. Nonetheless, according to Plaintiff, Nurse Tomlinson authorized FDOC officers to use chemical agents on Plaintiff. Plaintiff alleges that Nurse Tomlinson was present during the use of chemical agents, ignored Plaintiff's cries for help, and told Captain Lott to "spray the little monkey and shut him up!" (*Id.* at 18.)

Nurse Tomlinson contends that the undisputed evidence demonstrates she is entitled to summary judgment under Fed. R. Civ. P. 56. Nurse Tomlinson has filed evidence supporting her position, including but not limited to copies of Plaintiff's medical records, a copy of the

---

[2] Although Plaintiff brought various claims against other individual Defendants in counts three and four, he subsequently voluntarily dismissed those counts, and consequently, also voluntarily dismissed the other individual Defendants. (ECF Nos. 76–77, 80.) Count one, which asserts a claim against the Florida Department of Corrections for an ADA violation, remains pending as of the date of this report and recommendation.

Inspector General's report, fixed wing and handheld videos, deposition excerpts, and her own declaration made under penalty of perjury. (ECF Nos. 81-2–12.)

Plaintiff has not filed a response and has not filed or cited to evidentiary materials in support of his claim. Under Fed. R. Civ. P. 56(e),

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Defendant further represents in its notice to the Court, ECF No. 87, that he contacted Plaintiff's counsel and she advised that there was no intention to file a response. The Court, therefore, considers the following facts undisputed for purposes of the motion for summary judgment.[3]

---

[3] Normally, a prisoner's complaint may be treated by the Court as a sworn affidavit when signed under penalty of perjury. *See* 28 U.S.C. § 1746; *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."); *cf. Henderson v. Cherry*, No. 5:08cv283/RS/EMT, 2010 WL 1257487, at *1 n.2 (N.D. Fla. Mar. 16, 2010) (declining to consider plaintiff's response to defendant's motion for summary judgment as evidence because the response was not made under penalty of perjury). Here, however, because counsel filed the Complaint on behalf of Plaintiff, the Court may not consider the Complaint as a sworn affidavit for summary judgment purposes.

## II.  EVIDENCE

Plaintiff suffers from asthma and has a prosthetic left eye. (ECF No. 81-7.) On August 24, 2013, while Plaintiff was housed at Cross City Correctional Institution ("Cross City CI"), Plaintiff was brought to medical for a pre-confinement screening. (ECF Nos. 81-3–5, ECF No. 81-12.) Dr. Hernandez, the Chief Medical Officer for Cross City CI, completed a DC4-650B Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices for Plaintiff. (ECF No. 81-4.) Dr. Hernandez determined that based on a review of Plaintiff's medical record, Plaintiff has a medical condition that may be exacerbated by the use of chemical restraint agents. (*Id.*) Dr. Hernandez nonetheless approved the use of chemical agents on Plaintiff as long as medical is present and Dr. Hernandez is notified prior to the administration. (*Id.*) Nurse Tomlinson attempted to perform a physical assessment of Plaintiff but Plaintiff refused to cooperate and was escorted to administrative confinement. (*Id.*)

Later that day, Captain Lott asked Nurse Tomlinson to determine if chemical agents could be used against Plaintiff. (ECF Nos. 81-3–5.) Nurse Tomlinson consulted with Dr. Hernandez, and discussed the potential problems that may arise from the use of chemical agents on Plaintiff due to

his existing medical problems, the results of his last chronic illness clinic, and the date of Plaintiff's last medication refill. (ECF No. 81-5.) Dr. Hernandez told Nurse Tomlinson that chemical agents could be used as long as medical personnel were on standby and Dr. Hernandez was notified of the intent to use chemical agents on Plaintiff. (*Id.*; ECF No. 81-7.) Nurse Tomlinson thereafter relayed Dr. Hernandez's message to Captain Lott. (ECF Nos. 81-3–5.) Captain Lott informed Nurse Tomlinson that Captain Lott intended to use chemical agents on Plaintiff for continued disruptive behavior. (*Id.*) Accordingly, Nurse Tomlinson informed Dr. Hernandez of Captain Lott's intention. (*Id.*) Chemical agents were then administered to Plaintiff at approximately 4:05 p.m. (ECF No. 81-4.) Nurse Tomlinson was not present during the administration but instead remained on standby outside of the dorm in which Plaintiff was housed in case any medical issues arose. (ECF No. 81-5.)

Officers thereafter brought Plaintiff to Nurse Tomlinson at approximately 4:29 p.m. for a post-use-of-force exam. (ECF No. 81-4–5.) Plaintiff, however, refused to submit to medical assessment. (*Id.*) Nurse Tomlinson noted that Plaintiff was alert, oriented to person, place, time, and situation, responded to questions verbally, talked without difficulty, had

no obvious injuries, and did not appear to be in respiratory distress. (ECF No. 81-4.)  Although Plaintiff requested eye medication, he refused to allow Nurse Tomlinson to look at his eyes. (*Id.*) Plaintiff was instructed not to use soap lotion for 78 hours and to report any signs or symptoms of distress and subsequently escorted to confinement. (*Id.*)  Nurse Tomlinson then notified Dr. Hernandez following Plaintiff's post-use-of-force exam. (*Id.*)

After the incident, Plaintiff coughed up blood and suffered from temporary blindness in his single working eye for about two days. (ECF No. 81-10 at 34:15, 35:15–20.) He also experienced decreased vision and difficulty breathing. (*Id.* at 34:25, 35:1–15.) Nonetheless, although Plaintiff regularly wore glasses prior to the incident, he does not need to wear them anymore because he can see well without them. (ECF No. 81-11, 103:17–21.)

## III.  STANDARD OF REVIEW

The entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together

with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988.) "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005.)

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV.  DISCUSSION

Nurse Tomlinson argues that she is entitled to summary judgment as a matter of law in her official capacity based on Eleventh Amendment Immunity. She further argues that she is entitled to summary judgment in her individual capacity based on qualified immunity, because Plaintiff has failed to demonstrate a claim against her.

### A.  *Eleventh Amendment Immunity*

A suit against a state official in his official capacity is a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment prohibits a suit against the State absent

the State's consent to the suit. *Alabama v. Puch*, 438 U.S. 781, 782 (1978). Florida has not waived its sovereign immunity or consented to be sued in damage suits brought under § 1983. *See* § 768.28(18), Fla. Stat.; *Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986). Accordingly, to the extent that Plaintiff's claims are interpreted as bringing suit for damages against Defendant in her official capacity, Defendant is entitled to summary judgment as a matter of law.

### B. *Deliberate Indifference*

The Eighth Amendment provides the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To establish an Eighth Amendment violation stemming from the deprivation of medical attention, a prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A plaintiff has a "serious medical need" when the condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v.*

*Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). To show that the prison official was deliberately indifferent, the plaintiff must prove that: (1) the prison official had a subjective knowledge of a risk of serious harm; (2) the prison official disregarded that risk; and (3) did so by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (the prisoner must demonstrate that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th

Cir. 1977) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'"); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (*citing Hill*, 40 F.3d at 1189).

The undisputed evidence demonstrates that Nurse Tomlinson was not deliberately indifferent to Plaintiff's serious medical needs. Even assuming Plaintiff's asthma and prosthetic eye constitute serious medical needs, the evidence demonstrates that it was Dr. Hernandez—not Nurse Tomlinson—who approved the use of chemical agents on Plaintiff. Although Nurse Tomlinson attempted to conduct a pre-confinement screening on Plaintiff, Plaintiff refused. Nurse Tomlinson then provided Dr. Hernandez the medical information she had available at that time and Dr.

Hernandez authorized the administration of chemical agents. Nurse Tomlinson remained outside the dorm on standby as instructed by Dr. Hernandez to ensure there were no medical emergencies. There is no evidence of record that Nurse Tomlinson was present during the application, that she ignored Plaintiff's cries for help, or that Plaintiff suffered any unexpected complications during the application of chemical agents.

Nurse Tomlinson thereafter attempted to conduct a post-use-of-force examination within less than 30 minutes after the application. Plaintiff, however, refused examination. Nurse Tomlinson, nonetheless, noted that Plaintiff was alert, oriented, could speak normally, and appeared to have no difficulties breathing. Moreover, Nurse Tomlinson properly notified Dr. Hernandez following her post-use-of-force examination. In short, there is no record evidence which demonstrates or suggests that Nurse Tomlinson disregarded any risk to Plaintiff. Accordingly, Nurse Tomlinson is entitled to summary judgment in her individual capacity.

### C. Qualified Immunity

Even assuming Nurse Tomlinson was deliberately indifferent to Plaintiff's serious medical needs—which she was not—she would nonetheless be entitled to qualified immunity in her individual capacity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court must consider two factors: (1) whether the facts show that the officer's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed, the undisputed evidence demonstrates that Nurse Tomlinson's conduct did not violate Plaintiff's Eighth Amendment rights. Further, Plaintiff has pointed to no authority clearly establishing that Nurse Tomlinson's conduct—which is undisputed in this case—was objectively unreasonable. *See Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (once the government official proves she was acting within the scope of her discretionary authority, the burden shifts to the plaintiff to demonstrate that the defendant's conduct violated a clearly established constitutional right).[4] Nor can the Court locate any such authority. Defendant is therefore entitled to qualified immunity.

[4] There is no question that Defendant was acting within her discretionary authority as a nurse at the institution during the incident.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant's Motion for Summary Judgment, ECF No. 81, should be **GRANTED.**

**IN CHAMBERS** at Gainesville, Florida, this 13th day of June 2017.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**